PEOPLE *ex rel.* LUCKENMEYER *v.* COLEMAN *et al.*, Commissioners.

*(Supreme Court, General Term, First Department.  November 13, 1891.)*

1. TAXATION—EXEMPTION—CAPITAL INVESTED IN IMPORTED GOODS.
    Upon an issue whether or not the capital of a firm was actually invested on a day certain in imported goods in original packages, and therefore exempt from taxation, a witness testified that the business of the firm was that of importers in original packages, and that on the day in question all their capital was invested in that business, and had been for years before. *Held* insufficient to show that such capital was invested in such original packages themselves on the day in question, and not in the proceeds thereof, nor in accounts against purchasers of the same.

2. SAME—ASSETS EXCEEDED BY LIABILITY—MARGINS.
    Relator alleged that his liabilities exceeded the value of his assets, and that such assets—$150,000—were therefore exempt from taxation. Relator offered no evidence to sustain such claim, except that he had purchased 3,500 shares of stock from H., and had paid for the stock by exchanging with H. checks for $374,500, which checks were never entered on H.'s books. Relator alleged that the stock remained with H. as collateral for the check. H. never had any such stock in possession, and thereafter the account between relator and H. was settled by relator's paying H. a margin on the transaction. *Held*, that relator, never having acquired such stock, never became indebted therefor, and was not entitled to the exemption claimed by reason of such alleged indebtedness. *People v. Ryan*, 88 N. Y. 142, distinguished.

Appeal from special term, New York county.

*Certiorari* on the relation of Edward Luckenmeyer against Michael Coleman and others, commissioners of taxes of the city of New York, to review and cancel an assessment on part of relator's personal property for the year 1890. From a judgment dismissing the proceedings relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*H. Charles Ulman,* (*Charles Strauss,* of counsel,) for appellant. *William H. Clark,* Corporation Counsel, (*George S. Coleman,* of counsel,) for respondents.

VAN BRUNT, P. J. This proceeding was brought to review and cancel the assessment on part of the personal property of the relator for the year 1890. He was assessed in the sum of $150,000 for money invested by him in business in the city of New York. On the second Monday of January, 1890,—the date as of which this assessment is by law declared,—the relator resided in Paris. He was a special partner of the firm of Scheffer, Schramm & Vogel, of the city of New York, having contributed $350,000 as special capital,

which firm was engaged exclusively in importing dry goods, and in importing goods on consignment for sale in original packages. It was attempted to be shown that the individual indebtedness of the relator on the said second Monday of January was $374,500, and that the relator had no property of any kind, either real or personal, in this country, other than this special capital in this firm, the entire capital of which was wholly invested in imported goods in original packages. If either of these propositions is sustained, then the relator was not liable to taxation. Various other objections were raised by the counsel for the respondents to the review of the tax, but it is only necessary to consider the two above mentioned. The evidence wholly fails to show that the whole or any part of the capital contributed by the relator to the firm of which he was a member was at the time of the levying of this tax invested in imported goods in original packages. The evidence of Scheffer, one of the partners of the relator, is referred to as establishing this proposition; but on reading that evidence it will be seen that he nowhere swears to any such fact. He says that the business of the firm was importers of dry goods and commission business. That they received invoices of consigned goods, paid the duty on the same, and delivered them to parties, who sold them. The proceeds were payable to them, and they charged a commission for doing this. That the goods were all consigned from Europe, and that that had always been their business; and that on the second Monday of January, 1890, all the capital of the firm was invested in this business, and had been for years before that; and that in the making of sales they always made them in the original packages. But the evidence nowhere states that any part of this capital was on the second Monday of January invested in a single original package. Every article of goods which they had ever received may have been sold, and debts therefor due to the firm, or the money in bank, and the evidence be entirely correct and true. Such evidence falls far short of establishing a right of exemption because the capital of the firm was invested in imported goods in original packages. If the capital of the firm had actually been invested on the second Monday of January, 1890, in imported goods in original packages, this firm would never have thought it necessary to resort to the scheme hereinafter mentioned of creating an indebtedness for the purpose of avoiding taxation. The conclusion seems, from this circumstance, to be irresistible that the capital of the firm was not on that date invested in imported goods contained in original packages.

It is further claimed that the relator was not liable to taxation, because he was indebted to the firm of Hallgarten & Co. in the sum of $374,500 for the purchase of 3,500 shares of the capital stock of the New York Central & Hudson River Railway Company. It appears that Mr. Scheffer, the partner of the relator, went to Hallgarten & Co. and bought 3,500 shares of New York Central stock at a price which amounted to $374,500. It was not expected that this stock should be delivered immediately by Hallgarten & Co., or paid for immediately by the relator. A form of paying for the same was gone through with, namely, Hallgarten & Co. and the relator's firm exchanged checks for $374,500. This was so plainly simply an exchange of checks that it was never entered in the regular book of account of Hallgarten & Co. It is claimed that the appellant borrowed of Hallgarten & Co. $374,500 to pay for this stock, and that Hallgarten & Co. held the stock as collateral. But it appears that Hallgarten & Co. had no 3,500 shares of stock on hand at this time, and they never bought any stock for the appellant; but that in March the account was settled by the appellant paying to Hallgarten & Co. the difference in the market price of New York Central stock in January and its market price in March. We think that this transaction wholly failed to bring the case within the principle of *People* v. *Ryan*, 88 N. Y. 142, where it was held that an indebtedness created for the express purpose of avoiding a tax must be considered in determining whether a party has taxable property or

not, notwithstanding the fact that the indebtedness was created for the purpose of such evasion. In that case a man bought government bonds, and borrowed $25,000 to pay for them, and deposited the bonds as collateral for the loan, and the court held that it was an indebtedness which could be enforced against the defendant when the tax was levied, and consequently should have been deducted. In the case at bar it is difficult to see what debt was due to Hallgarten & Co. in January, 1890. No indebtedness could accrue to Hallgarten & Co. until they delivered or tendered the 3,500 shares of stock. At most the relations between the appellant and Hallgarten & Co. created a contract out of which a debt might arise, but no debt existed until Hallgarten & Co. tendered the stock and demanded payment; nor could they claim the purchase price without offering to deliver the stock. The pretext of exchanging checks did not alter the question. It was perfectly plain that it was a simple exchange of checks. The giving of a check by Hallgarten & Co. to the appellant's firm, and the taking of their check for the same amount upon the same day, created no change in the contractual relations existing between Hallgarten & Co. and the appellant. This view is emphasized by the fact that Hallgarten & Co. had not 3,500 shares of stock to deliver to the appellant, and never held 3,500 shares of stock as collateral to any indebtedness of his to them. We think, therefore, the learned judge below was right in holding that no case for exemption was shown. The judgment should be affirmed, with costs.